# United States Bankruptcy Court
# District of Massachusetts
# Western Division

_____  )
In re:                               )
                                     )     Chapter 7
FIBERCORE, INC.,                     )     Case No. 03-46551-HJB
                                     )
          Debtor.                    )
_____  )

## MEMORANDUM OF DECISION

Before this Court is the "Trustee's Motion for Approval of Compromise" (the "Motion to Compromise") filed by Steven Weiss, the Chapter 7 trustee (the "Trustee") of Fibercore, Inc. (the "Debtor"). The Trustee seeks leave to enter into an agreement with the Debtor and investment and merchant bank Cagan McAfee Capital Partners, LLC ("Cagan McAfee") to settle a claimed violation of the automatic stay under 11 U.S.C. § 362.[1] Silica Tech, LLC ("Silica Tech"), a creditor and shareholder of the Debtor, objects to the Motion to Compromise. The issue to be determined by this Court is whether the Motion to Compromise meets the standards set forth by the First Circuit Court of Appeals in <u>Jeffrey v. Desmond</u>, 70 F.3d 183 (1st Cir. 1995).

---

[1] Unless otherwise noted, all statutory references are to Title 11 of the United States Code (the "Bankruptcy Code" or the "Code").

1

I.  **FACTS AND TRAVEL OF THE CASE**

The Debtor filed a Chapter 11 petition in this Court on November 14, 2003. Prior thereto, the Debtor was involved in the manufacture and sale of fiber optic cable through subsidiary corporations both in the United States and abroad. The Debtor is incorporated in the state of Nevada and, before filing this case, its stock was publicly traded.

On May 4, 2004, this Court ordered the appointment of a Chapter 11 trustee. Attorney Steven Weiss was appointed by the United States trustee for Region 1. And, following a request from the Chapter 11 trustee, this Court converted the case to Chapter 7 on October 6, 2004. Attorney Weiss was then appointed as the Chapter 7 trustee.

Unbeknownst to the Trustee, on August 18, 2006, shareholders of the Debtor filed a proceeding in the Second Judicial District Court of the State of Nevada, County of Washoe (the "Nevada Court") for the appointment of a custodian (the "Custodianship Proceeding")[2] pursuant to Nevada Revised Statute § 78.347.[3] The Nevada Court

---

[2] The Nevada Court action is <u>Volpe v. Fibercore, Inc.,</u> No. CV06-02006 (Nev. 2nd J. Dist. Ct., filed August 18, 2006).

[3] The language of Nevada Revised Statute § 78.347 at the time of the filing of the Custodianship Proceeding was as follows:
> "Any stockholder may apply to the district court to appoint one or more persons to be custodians of the corporation, and, if the corporation is insolvent, to be receivers of the corporation when:
> (A) The business of the corporation is suffering or is threatened with irreparable injury because the directors are so divided respecting the management of the affairs of the corporation that a required vote for action by the board of directors cannot be obtained and the stockholders are unable to terminate this division; or
> (B) The corporation has abandoned its business and has failed within a reasonable time to take steps to dissolve, liquidate or distribute its assets in accordance with this chapter.
>
> "A custodian appointed to this section has all the powers and titles of a trustee appointed under NRS 78.590, 78.635 and 78.650, but the authority of the custodian is to continue the business of the corporation and not to liquidate its affairs or distribute its assets, except when the district court so orders and except in cases arising pursuant to paragraph (b)."

appointed a Mark Smith as custodian (the "Custodian").  In October 2006, the Custodian submitted a report to the Nevada Court and requested that he be discharged.  In summary, the Custodian reported that he was unable to find the Debtor's officers, directors, records or assets.[4]  Seemingly satisfied, the Nevada Court discharged the Custodian.

The Trustee first became aware of the Custodianship Proceeding in late November, 2006, upon receipt of a notice of proposed shareholder's meeting from a representative of Silica Tech.  After obtaining a copy of the notice of entry of default and default judgment entered by the Nevada Court in the Custodianship Proceeding, the Trustee sent a letter to counsel to the plaintiff shareholders, dated December 6, 2006, stating that, to the extent that the Custodianship Proceeding constituted an attempt to obtain control over the

---

NRS 78.347(1)(1991).

[4]  The "Report of the Custodian and Request for Discharge" states that the Custodian investigated the current "condition and status of the Corporation" which included a search for the Debtor's former officers and directors and for its corporate and financial records.  The Custodian reported the following to the Nevada Court:

> "Based on that investigation, the Custodian has determined that the former officers and directors of the Corporation, who cannot now be located or who have failed to respond to the Custodian, have abandoned their duties and offices, and have failed and refused to carry out their fiduciary duties to the Corporation and its shareholders.  Accordingly, as Custodian, I have appointed Mark Smith of Carson City, Nevada, as sole officer and director serving as President and Secretary of the Corporation, to act in the best interests of the Corporation.  I have also appointed a new resident agent for the Corporation, Laughlin Associates, Inc. Of Carson City, Nevada....
>
> Further, based on his investigation, the Custodian has determined that there are 68,876, 094 shares of the $.001 par value common stock of the Corporation validly issued and outstanding and that there is 1 preferred share of the Corporation validly issued or outstanding.
>
> Further, based on his investigation, the Custodian has been unable to locate any assets belonging to the Corporation, and no records of any valid remaining liabilities, liens, judgments, warrants, options, or other claims against the Corporation or its stock.  Upon the conclusion of the Custodian's investigation, it is agreed that the findings will be presented to the shareholders in a shareholder meeting to be held within 90 days after receiving the Corporation's Certified Shareholder List from the Transfer Agent, or its equivalent."

See Report of Custodian and Request for Discharge, Case No. CV06-02006, Docket No. 3, filed November 3, 2006.

Debtor's assets, it was likely invalid as a violation of the automatic stay. At some time subsequent to that communication from the Trustee, Hipoteca Seville, Inc. and Milagrosa Vista Corp. ("Hipoteca" and "Milagrosa"), which acquired their shares from the Custodian in exchange for providing advisory services to the Debtor during the Custodianship Proceeding, sold their shares of stock in the Debtor to Cagan McAfee for a collective sum of $140,000. Cagan McAfee is a California investment and merchant bank represented by The Krueger Group, LLP. Part of Cagan McAfee's business strategy is to identify corporate shell entities as potential candidates for acquisition and for reverse merger.[5] The shares were purchased <u>after</u> inquiry and discussion with the Trustee regarding the Custodianship Proceeding as an alleged violation of the automatic stay.

Based on the Trustee's allegations, Cagan McAfee and the Trustee entered into settlement discussions. Those discussions bore fruit, resulting in the following agreement, subject to approval from this Court:

---

[5]

> A "reverse merger" . . . . is a transaction in which a private operating corporation (a "private" company) merges into a corporation whose stock has previously been offered to the public (a "public" company). Typically, the public company will at the time of the reverse merger be a "shell" company with minimal assets and liabilities and no actual operations. To complete the securities aspect of the reverse merger, the public shell company will exchange its treasury stock (along with, perhaps, shares from its stockholders) for all outstanding shares of the private company, and in consideration, the shareholders who control the public shell company will transfer most of their shares in the shell company to the owners of the private company. Often the public shell company will take on the name formerly used by the private company, and operations will carry on as before, except the formerly private company is now an issuer of publicly traded securities. The overall transaction thus provides a way for the private company effectively to offer its stock to the public.

<u>S.E.C. v. M & A West, Inc.</u>, 2005 WL 1514101 (N.D. Cal. June 20, 2005).

(a) the Debtor[6] would pay the Trustee the sum of $60,000.00, within thirty (30) days of court approval;

(b) the Trustee would release the Debtor, the Custodian, and their agents and attorneys from any claims relating to the Custodianship Proceeding and the Custodian and the Debtor would release any claims that they might have against the bankruptcy estate; and

(c) the Debtor and the Custodian would be granted relief from the automatic stay *nunc pro tunc* to June 1, 2006,[7] so that actions taken in the Custodianship Proceeding and subsequent actions by the current board of directors would be validated.

After Silica Tech filed its objection, a hearing was held thereon after which the matter was taken under advisement. Supplemental briefs and responses were filed by the Trustee, Silica Tech and Cagan McAfee in support of their respective positions.

---

[6] If the Motion to Compromise is approved, Cagan McAfee intends to disburse $60,000 to the Debtor which The Krueger Group, LLP is currently holding in its attorney-client trust account pending this Court's decision. These funds will then be paid to the Trustee.

[7] The Court takes note that in the Motion to Compromise filed with the Court on October 26, 2007, the date for relief from the automatic stay *nunc pro tunc* was to January 1, 2006. In the Trustee's Memorandum in Support of Motion for Approval of Compromise filed with this Court on February 1, 2008, the proposed compromise cites a date of August 1, 2006 from which relief from the automatic stay will be granted. A footnote attached to the August 1, 2006 date, however, states that the Trustee and Cagan McAfee have agreed to a June 1, 2006 date. This June 1, 2006 date was repeated by the Trustee at the February 6, 2008 hearing and therefore this Court recognizes the June 1, 2006 date as that which the Trustee and Cagan McAfee intended. In any event, the Court's decision below moots any impact of the discrepancy.

II.     **POSITION OF THE PARTIES**

    a.     **The Trustee**

The Trustee urges this Court to approve the proposed settlement, arguing that it is in the bankruptcy estate's best interest and that Silica Tech has not provided any evidence or legal authority in support of its objection. The Trustee contends that the compromise would resolve any potential claims that the estate would have against the Debtor's current officers and directors and the Custodian for damages for any violation of the automatic stay under § 362 and thereby avoid costly litigation. Further, the Trustee argues that there is a question as to whether the estate was in fact damaged by the actions of the Custodian. The Trustee cites to cases which hold that a debtor's corporate structure, including authorized but unissued stock, does not constitute property of the estate. See In re Paso del Norte Oil Co., 755 F.2d 421, 424 (5th Cir. 1985) and In re Mid-America Petroleum, 71 B.R. 140, 141 (Bankr. N.D. Tex. 1987). And thus, the Trustee maintains that the claim that a debtor's "corporate shell" is an asset of the bankruptcy estate is not without question. But that question would be squarely presented if the Trustee attempted to sell the "corporate shell." The compromise here avoids that problem since the Trustee is not attempting to "sell" anything. Given that there is no dispute regarding estate ownership of the alleged stay violation, the Trustee takes the position that settlement of that asset (damages for the stay violation) is preferential to the attempted sale of the Debtor's "corporate shell." And, even assuming that the commencement of the Custodianship Proceeding was found to be a stay violation, the Trustee asserts it might be difficult to demonstrate that the violation

was a knowing, willful act or that the actions taken by the shareholders and the Custodian resulted in actual damage to any identifiable, ascertainable estate asset.

The Trustee further takes issue with Silica Tech's claim that shareholder equity interests will be adversely affected by the compromise. According to the Trustee, Silica Tech's stock interest in the Debtor has no value in this case, as there will never be enough estate funds to fully compensate unsecured creditors. In fact, the Trustee maintains that allowing the compromise would actually provide the shareholders with a potential benefit - if the reverse merger is successful, the shareholders would still be holders of their shares in an operating, publicly traded corporation.

Finally, the Trustee fears that denial of leave to compromise would mire the estate in a shareholder dispute over 2,000 miles away and of questionable benefit to the estate. The Trustee contends that any dispute by Silica Tech seeking value for its shares or to challenge the due process afforded Silica Tech in Nevada should be adjudicated not here, but in the Nevada courts. Because the Custodianship Proceeding was commenced under Nevada state law, the Trustee argues that Silica Tech could more appropriately determine its shareholder rights in the courts more familiar with corporate governance issues regulated by Nevada state law.

    b.    **Silica Tech**

Silica Tech views the motion before the Court as the "abandonment" or "sale" of an estate asset - and not a compromise. As both a creditor and shareholder of the Debtor, Silica Tech objects to the motion on the grounds that there is insufficient information to evaluate the compromise and that if allowed, the compromise would, in effect, result in the transfer of the Debtor's "corporate shell." More specifically, Silica Tech argues that the

Trustee provides no evidence for the reasonableness of the $60,000 proposed payment or for the value of the Debtor's "corporate shell,"[8] and has not identified the tax implications of the compromise.[9]

Silica Tech maintains that the Custodianship Proceeding was a clear violation of the automatic stay requiring that all actions by the Custodian be deemed void. And if void, the shares issued to Hipoteca and Milagrosa would be no longer valid, and Cagan McAfee would no longer have a majority interest in the Debtor - quashing the prospective reverse merger. Silica Tech maintains that allowance of the compromise would amount to this Court's blessing the actions of the Nevada Court with respect to which shareholders were provided no notice and would negatively impact the value of its current shares. Indeed, Silica Tech contends that allowing Cagan McAfee to continue as majority shareholder would likely result in the election of new directors whose interest would conflict with those of other creditors and shareholders.

Further, Silica Tech claims that this compromise is not the best result that the Trustee could attain on behalf of the estate. Silica Tech presents its own purchase offer for the Debtor's "corporate shell" to the Trustee as evidence that there is a "better" alternative to a compromise of the potential stay violation:

> "Silica Tech will pay the estate $100,000 plus 8.5% of the common stock of reorganized FiberCore, Inc. Silica Tech will pay $60,000 in cash (the "deposit") upon the Trustee's acceptance of this offer. The Trustee will

---

[8] Silica Tech stated at the hearing that bankruptcy estates are "routinely paid some significantly more than $60,000 for the rights to operate and be the Board of Directors for the corporate shell." Transcript of Hearing at 16, No. 360 (February 6, 2008). The source for that statement was not identified.

[9] The Trustee rejects Silica Tech's tax argument on two fronts. First, there would be no capital gain loss to the estate as this is not a "sale" and secondly, even if the Trustee was selling an asset, the fact that the Debtor has pre-petition losses totaling over $36.5 million would offset any gain from the sale.

>     withdraw the Motion to Compromise with prejudice. The Trustee will jointly move with Silica Tech to reconvert the case to proceedings under Chapter 11. Silica Tech will prepare, at its expense, a Chapter 11 Plan and disclosure statement describing that Plan. Upon acceptance of the Plan, Silica will fund the Plan provisions by transferring additional consideration of $40,000 in cash and 8.5% of the outstanding stock in reorganized FiberCore to the estate. Silica's offer is subject to higher and better offers, solicited in compliance with the bankruptcy code and federal and local rules. If Silica is not the successful bidder at any resulting auction, it will be entitled to a breakup fee of $60,000, the amount of the deposit. The offer is contingent upon the following:
>     a) entry of a final order confirming that the Nevada Action is
>        void as a violation of the automatic stay; and
>     b) confirmation of Silica's Plan."

Silica Tech's Reply to the Trustee's Response to the Brief in Opposition to the Trustee's Motion for Approval of Compromise at 3, No. 364 (March 3, 2008).[10]

Silica Tech admits that a ruling by this Court approving the compromise does not deny it the opportunity to litigate its concerns in the Nevada courts - but claims that it should not have to go to the Nevada state court whose actions clearly violated the automatic stay. Nor does Silica Tech believe that cause has been shown for retroactive relief from the stay as there do not exist the "special circumstances" necessitated under the First Circuit precedent of Soares v. Brockton Credit Union. Instead, Silica Tech avers that the facts this case demand denial of *nunc pro tunc* relief as the orders of the Nevada judge were obtained under "false or fraudulent pretenses," the action harmed the Debtor,

---

[10]  The Trustee represents that the offer by Silica Tech to acquire the Debtor's "corporate shell" and potentially attempt its own reverse merger involves significant obstacles as the offer is contingent upon confirmation of a Chapter 11 plan for the Debtor and also a final order confirming that the Nevada proceedings are void as a violation of the automatic stay. The Trustee questions the ability of Silica Tech to produce a successful proposal given Silica Tech has not received any revenue since purchasing estate property in 2005 and is led by the same persons who led the Debtor into Chapter 11. Other obstacles listed by the Trustee include: addressing tax and securities issues, successful resolution of litigation between Silica Tech and J-Fiber, unsecured creditor approval, and adequate capitalization and operational success of Silica Tech. Trustee's Response to Silica Tech's Brief in Opposition to Trustee's Motion for Approval of Compromise at 3-4, No. 362 (February 27, 2008).

9

the creditors and shareholders, and the proceedings effectuated a transfer of rights and property out of the estate for less than adequate value.

### c. Cagan McAfee [11]

Cagan McAfee represents that it is nothing more than a "bona fide third-party purchaser and acquires a controlling interest through good faith reliance upon the judicial orders of a Nevada judge." Declaration of Robert Blair Kreuger, ESQ. In Support of Trustee's Motion for Approval of Compromise at 2, No. 352 (January 21, 2008). It contends that the outstanding shares of the Debtor are not estate assets and that the Custodianship Proceeding was not a violation of the automatic stay as it was not an action "against the debtor" under § 362(a)(1). Cagan McAfee emphasizes that no action was taken against the Debtor and none of the Debtor's assets were "liquidated, distributed or otherwise disturbed" during the course of the Custodianship Proceeding. It concurs with the Trustee's assertion that Silica Tech's complaint regarding shareholder rights and inadequate notice would best be served by pursuing action in the Nevada courts as the Debtor subjected itself to the Nevada custodianship statute by incorporating itself in that forum.

Cagan McAfee also takes serious issue with Silica Tech's claim that the Custodianship Proceeding and Cagan McAfee's majority ownership of the Debtor's shares harms the other shareholders. According to Cagan McAfee, the shares of the Debtor are

---

[11] Blair Kreuger, on behalf of Cagan McAfee, appeared with the Trustee at the February 6, 2008 hearing on the Motion to Compromise and was admitted as counsel pro hac vice. Included in the Trustee's supplemental materials submitted after the hearing, was a response from Cagan McAfee to Silica Tech's opposition brief.

currently worthless and through a successful reverse merger, the value of the Debtor's shares will be greatly increased.

### III. DISCUSSION

Under First Circuit precedent, violations of the automatic stay are generally void. Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969, 976 (1st Cir. 1997). The automatic stay is a "fundamental protection for all parties affected by the filing of a petition in bankruptcy" and "should not be dismantled without good reason." Id. at 977 (citation omitted). Retroactive relief from the automatic stay may be granted upon a showing of appropriate circumstances and "must rest on a set of facts that is both unusual and unusually compelling." Id. at 976-977. The decision to grant retroactive relief is "within the wide latitude of the Court with each decision being considered on a case-by-case basis." In re Stockwell, 262 B.R. 275, 280 (Bankr. D. Vt. 2001)(citations omitted).

Pursuant to Bankruptcy Rule 9019(a)[12], a bankruptcy judge has the authority to approve the compromise of a claim, including those for claimed violations of the automatic stay. In deciding whether to approve a compromise, the bankruptcy court is required to "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." Jeffrey v. Desmond, 70 F.3d at 185 (quoting In re GHR Cos., 50 B.R. 925, 931 (Bankr. D. Mass. 1985)). The factors

---

[12] Bankruptcy Rule 9019(a) states:

"On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct."

which a bankruptcy court should consider when making this determination are: (1) the probability of success in the litigation being compromised; (2) the difficulties, if any, to be encountered in the matter of collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay attending it; and (4) the paramount interest of the creditors and a proper deference to their reasonable views in the premise. Id. (citing In re Anolik, 107 B.R. 426, 429 (D. Mass. 1989)). When considering the foregoing, deference should also be given to the Trustee's judgment regarding the settlement, Hill v. Burdick (In re Moorhead Corp.), 208 B.R. 87 (1st Cir. BAP 1997), provided that the trustee can demonstrate that the proposed compromise falls within a 'range of reasonableness'. In re Whispering Pines Estates, Inc., 370 B.R. 452, 61 (1st Cir. BAP 2007)(citing In re 110 Beaver St. P'ship, 244 B.R. 185, 187 (Bankr. D. Mass. 2000)).

Although the Court recognizes fully well the fundamental importance of the automatic stay and appreciates the concern that Silica Tech expresses towards the preservation of this fundamental principal, the Court need not decide today whether there was a violation of the stay. Nor need it decide whether a "corporate shell" is an estate asset or determine its precise legal definition. Nor need the Court ascertain whether the actions of the Trustee are tantamount to a sale. Resolving these legal questions is not only beyond the scope of this Motion to Compromise, but, in fact, the point of the proposed compromise is to avoid asking the Court to make those rulings and thereby avoid the risk of an adverse result. Accordingly, the Court now turns to the Jeffrey v. Desmond factors.

I.      Probability of Success in the Compromised Litigation

The litigation avoided by this compromise is the pursuit of an order finding that the Custodianship Proceeding was a violation of the automatic stay and that the bankruptcy

estate was damaged thereby. Silica Tech believes that the actions taken in the Nevada Court are "clear" violations of the automatic stay. Cagan McAfee disagrees. Neither the Custodian nor the officers or directors of the Debtor have conceded that there was a violation. The Trustee is himself not certain of the outcome or what damages would be awarded if liability were found. Thus, what is "clear" to one party appears foggy to another and the Trustee believes it is better to pursue a guaranteed, relatively immediate payment to the estate of $60,000 than pursue litigation hoping for more. This Court can not quarrel with that conclusion. And even assuming that the Trustee would be successful in an action against those involved in the Custodianship Proceeding, punitive damages may not be available and any award would be then limited to attorney fees and costs, which at this point are likely less than the proposed $60,000 settlement. Valuation of the claimed loss to the estate is also difficult to ascertain as it has not been established whether the estate actually "lost" anything. Also avoided is likely future litigation with respect to any attempt by the Trustee to sell the rights that are in dispute.

    II.    Difficulties in Collection

Collection of any judgment against those who purportedly violated the automatic stay would require additional legal action by the Trustee in a forum over 2,000 miles away. The compromise presented to this Court, however, guarantees an immediate monetary benefit to the estate. And questions with respect to the Trustee's ability to sell the rights in dispute are avoided.

    III.    Complexity of Litigation

In considering the complexity of the litigation being compromised, the Court looks also to the expense, inconvenience and delay which may be involved. As explained by the

Trustee, there exists a legal question about the ability of a Trustee to sell a debtor's "corporate shell." Thus, even if the Nevada action was deemed void, it is not certain that the Trustee would be able to sell anything of the Debtor for estate benefit - even to Silica Tech. The sale proposed by Silica Tech is contingent both upon a finding that there was a violation of the automatic stay and the confirmation of a Chapter 11 plan. The contingent offer by Silica Tech would ensure that the Debtor remained in bankruptcy for an uncertain number of additional years. The Debtor's case was filed in 2003 and the Trustee, apparently, has finally reached the point of winding up the estate. To pursue the actions which Silica Tech proposes would likely result in a significant delay in administering the estate without the guaranty of success - and an indeterminable increase in administrative costs.

IV.    Interest of the Creditors

The Trustee has been left with essentially two "offers." One, which is encompassed in the motion before this Court, provides an immediate monetary benefit to the estate. The other is the Silica Tech proposal to purchase the "corporate shell" for approximately twice the amount in this settlement, but conditioned upon events which are not guaranteed to occur and, if they do, may not occur for some time. The choice as to which is best for creditors has been made by the Trustee, and is one with which the Court, again, can not quarrel.

On the basis of the foregoing, this Court is inclined to find and rule that the compromise is sound. Still, there is one more problem. Cagan McAfee has argued that the automatic does not apply. That argument is plausible, and, in any event, has not yet

been established. Accordingly, the Trustee could settle on the basis that Cagan McAfee may be correct on that point. But that is not what the proposed settlement provides. Instead, it provides that the Court will rule that the automatic stay has been lifted *post facto* to a date certain. This the Court will not do. If the Court is required to rule that the automatic stay applied - a seemingly necessary predicate to its being lifted - the facts here will not support a finding that there exist "unusual and unusually compelling" circumstances within the meaning of Soares in order to permit a *post facto* order - particularly where actions were taken contrary to the alleged stay after the Trustee warned the parties that their actions might violate the stay.

## IV.    CONCLUSION

For the foregoing reasons, the Court approves the "Trustee's Motion for Approval of Compromise," but only if amended so that the Trustee waives his claim that the stay applied, in lieu of a ruling by this Court that the automatic stay applied, but is *post facto* lifted. As for Silica Tech, it is free to pursue its shareholder claims, if any, in Nevada. With the estate's rights settled, what happened in Nevada should stay in Nevada. An order in conformity with this Memorandum shall issue forthwith.

DATED:    July 14, 2008    _____
　　　　　　　　　　　　　　　　　　Henry J. Boroff
　　　　　　　　　　　　　　　　　　United States Bankruptcy Court